IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII IRON WORKERS HEALTH AND WELFARE TRUST FUND, BY ITS TRUSTEES, ET AL.<br><br>         Plaintiffs,<br><br>   vs.<br><br>D&C WELDING STRUCTURAL & ORNAMENTAL, INC.,  JOHN DOES 1-10,  JANE DOES 1-10,  DOE CORPORATIONS 1-10,  DOE PARTNERSHIPS 1-10,  DOE GOVERNMENT AGENCIES 1-10, DOE TRUSTS 1-10,<br><br>         Defendants. | CIV. NO. 20-00410 JMS-RT<br><br>FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT D&C WELDING STRUCTURAL & ORNAMENTAL, INC. |

FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS'
MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST
DEFENDANT D&C WELDING STRUCTURAL & ORNAMENTAL, INC.

Plaintiffs' Motion for Entry of Default Judgment Against Defendant D&C

Welding Structural & Ornamental, Inc. ("Motion"), filed on February 5, 2021

(ECF No. 13), came on for a telephonic hearing on April 8, 2021 at 9:30 a.m.

before the Honorable Rom A. Trader.  Attorney Jacob Kamstra appeared by phone

on behalf of Plaintiffs.  Defendant D&C Welding Structural & Ornamental, Inc.

("Defendant") did not appear for the hearing and made no opposition, objection, or other communication.

After careful consideration of the Motion, record in this case, and applicable law, this Court FINDS and RECOMMENDS that the Motion be GRANTED.  This Court FINDS and RECOMMENDS that Plaintiffs be awarded a total of $54,284.82 in damages for $35,223.51 in delinquent contributions, $5,777.34 in interest on the delinquent contributions, and $13,283.97 in liquidated damages. This Court also FINDS and RECOMMENDS that Plaintiffs be awarded $7,722.00 in attorneys' fees, and Plaintiffs' request for costs in the amount of $543.46 be DENIED without prejudice as these costs are taxable and appropriately brought in a Bill of Costs.  Pursuant to Rule 54.1 of the Local Rules of Practice for the United States District Court for the District of Hawaii ("LR"), Plaintiff may choose to file a Bill of Cost within fourteen (14) days after the entry of judgment.

BACKGROUND

Plaintiffs commenced this action on September 30, 2020.  ECF No. 1. Plaintiffs allege that Defendant entered into an agreement to abide by the Collective Bargaining Agreement ("CBA"), dated September 1, 2017, as amended. ECF No. 1 at PageID #: 6.  Pursuant to the CBA, Defendant also agreed to be

2

bound by all the terms of the Declaration of Trust Agreement for each Trust Fund.[1]

Id.  Plaintiffs are third party beneficiaries of the CBA.  Id.  Defendant agreed to

pay to Plaintiffs certain amounts for employee benefits and work performed by

Defendant's covered employees.  Id. at PageID #: 7.  Defendant agreed to make

such payments on or before due dates specified in the CBA.  Id.  Defendant agreed

to pay liquidated damages if any monthly contributions and were not paid when

due.  Id. at PageID #: 8.  Plaintiffs allege that Defendant failed to make

contributions in a timely manner.  Id. at PageID #: 10.  Plaintiffs claim that they

are entitled to unpaid contributions, liquidated damages and/or interest, and

attorneys' fees and costs.  Id.

On October 12, 2020, Plaintiffs filed a proof of service indicating that

Defendant was served a copy of the Complaint and summons by a process server

on October 10, 2020.  ECF No. 7.  Defendant failed to answer or respond to the

Complaint.  Plaintiffs filed a Request for Entry of Default Against Defendant on

---

[1] "Plaintiffs are the Trustees of the Hawaii Iron Workers Trust Funds, which include the Hawaii Iron Workers Health and Welfare Trust Fund ("Health and Welfare Fund"), Hawaii Iron Workers Annuity Trust Fund ("Annuity Fund"), Hawaii Iron Workers Stabilization Fund ("Stabilization Fund"), Hawaii Iron Workers Pension Trust Fund ("Pension Fund"), Hawaii Iron Workers Training Trust Fund ("Training Fund"), and Hawaii Iron Workers Vacation & Holiday Trust Fund ("Vacation and Holiday Fund") (hereinafter collectively referred to as the "Trust Funds")."  ECF No. 13-1 at PageID #: 53, n. 1.

November 9, 2020.  ECF No. 9.  The Clerk entered default against Defendant on that same day.  ECF No. 10.

On February 5, 2021, Plaintiffs filed the instant Motion.  ECF No. 13. Defendant did not file an opposition.

On March 22, 2021, Plaintiffs filed a Reply Memorandum in Further Support of Their Motion for Entry of Default Judgment Against Defendant, Filed February 5, 2021 ("Reply").  ECF No. 17.  In their Reply, Plaintiff requests that this Court grant the present Motion as unopposed.

On April 8, 2021, this Court issued an entering order directing Plaintiffs to supplement their request for attorneys' fees.  ECF No. 19.  Plaintiffs submitted invoices attached as an exhibit to their Motion as evidence in support of the hours Plaintiffs' attorneys worked.  These invoices were heavily redacted such that this Court could not determine the reasonableness of the hours expended.  On April 12, 2021, Plaintiffs timely submitted their supplement.  ECF No. 21.

DISCUSSION

Rule 55(b)(2) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) provides that a court may enter default judgment following the Clerk's entry of default pursuant to Fed. R. Civ. P. 55(a).  "The district court's decision whether to enter a default judgment is a discretionary one."  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (citations omitted).

4

I.      Jurisdiction

This Court must first consider whether it has subject matter jurisdiction over

this action and personal jurisdiction over the Defendant prior to determining

whether default judgment is warranted.  See In re Tuli, 172 F.3d 707, 712 (9th Cir.

1999) ("To avoid entering a default judgment that can later be successfully

attached as void, a court should determine whether it has the power, i.e., the

jurisdiction, to enter the judgment in the first place").  In this case, this Court has

subject matter jurisdiction over Plaintiffs' claims pursuant to the Employment

Retirement Income Security Act of 1974, as amended ("ERISA").  See 29 U.S.C.

§§ 1132(e) & 1145.

This Court has personal jurisdiction over the Defendant.  Personal

jurisdiction can be acquired by personal service or by a defendant's "minimum

contacts" within the jurisdiction.  Cripps v. Life Ins. Co. of North America, 980

F.2d 1261, 1267 (9th Cir. 1992) (citing Burnham v. Superior Court of Cal., 495

U.S. 604 (1990)).  The record reflects that service was made on Defendant through

a process server on October 10, 2020.  ECF No. 7.  Moreover, the Complaint

alleges that Defendant was a Hawaii corporation doing business on the Island of

Oahu, in the City and County of Honolulu, State of Hawaii.  ECF No. 1 at PageID

#: 5.  As such, this Court has personal jurisdiction over Defendant.

II.     Eitel Factors

Default judgment may be entered for the plaintiff if the defendant has

defaulted by failing to appear and the plaintiff's claim is for a "sum certain or a

sum that can be made certain by computation."  Fed. R. Civ. P. 55(b)(1)-(2).

However, "[e]ntry of default does not entitle the non-defaulting party to a default

judgment as a matter of right."  In re Villegas, 132 B.R. 742, 746 (9th Cir. 1991)

(citing Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990)) (citations omitted).

Default judgments are ordinarily disfavored, and cases should be decided on their

merits if reasonably possible.  Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir.

1986).

In determining whether default judgment is warranted in this case, this Court

shall evaluate the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
> the sum of money at stake in the action, (5) the possibility of a dispute
> concerning material facts, (6) whether the default was due to excusable
> neglect, and (7) the strong policy underlying the Federal Rules of Civil
> Procedure favoring decision on the merits.

Id. at 1471-72 (citation omitted).  On default, "the factual allegations of the

complaint, except those relating to the amount of damages, will be taken as true."

TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting

Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)).  The Court shall

consider each factor in turn.

6

A.      Possibility of Prejudice

This factor requires the consideration of whether Plaintiffs would suffer

prejudice if default judgment is not entered.  PepsiCo, Inc. v. Cal. Sec. Cans, 238

F. Supp. 2d 1172, 1177 (C. D. Cal. 2002).  Defendant failed to answer or respond

to Plaintiffs' Complaint.  This makes a decision on the merits impractical, if not

impossible.  Absent entry of default judgment, Plaintiffs would be without recourse

for recovery.  This Court thus FINDS that this factor favors default judgment.

B.      Merits of the Claim

As stated earlier, the factual allegations in the Complaint, for purposes of

liability, will be taken as true.  TeleVideo Sys., 826 F.2d at 917-18 (citation

omitted).  Plaintiffs brought this action against Defendant for unpaid contributions

to recover benefits due under ERISA.  Plaintiffs allege that the Defendant has

violated its contractual and statutory duty to make contributions to Plaintiffs as

required by the CBA and ERISA.  Plaintiff explains that Defendant is a

contributing employer under the CBA and Plaintiffs are third-party beneficiaries of

the CBA.  Plaintiff alleges that despite agreeing to be bound by the CBA,

Defendant has failed to make contributions to Plaintiffs on multiple occasions

beginning with the month of September 2019, where the contributions were due on

or before October 21, 2019.  ECF No. 13-1 at PageID #: 66.  Based on its review

7

of these allegations in the Complaint, this Court finds that this factor weighs in favor of default judgment.

C.    Sufficiency of the Complaint

As determined under the merits-of-the-claim analysis, the allegations in the Complaint are sufficiently pled and supported by the documents and declarations filed with the Motion.  The Court thus FINDS that this factor weighs in favor of default judgment.

D.    Sum of Money at Stake

This Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at 1176 (citing Eitel, 782 F.2d at 1472).  Plaintiffs seek $35,223.51 in delinquent contributions, $5,777.34 in interest on the delinquent contributions, and $13,283.97 in liquidated damages for a total of $54,284.82 in total damages.  Plaintiffs also seek $7,722.00 in attorneys' fees and $543.00 in costs.  The total judgment amount Plaintiffs request is $62,550.28.  Plaintiffs also request post-judgment interest to be determined from the date of entry of judgment until the judgment is paid in full. Plaintiffs' damages request is tailored to Defendant's wrongful conduct of failing to abide by the terms of the CBA and as set forth under ERISA.  The damages sought are also for a sum certain, and in the case of the post-judgment interest, for

a sum which can be made certain by computation. Thus, this factor also weighs in favor of default judgment.

E.    Likelihood of a Dispute Concerning Material Facts

Defendant was given notice and had sufficient time to answer the Complaint and deny Plaintiffs' allegations. However, Defendant has done nothing to dispute the allegations. Defendant was also served a copy of this Motion (ECF No. 13-18) and failed to respond or appear to defend. Because no dispute has been raised regarding Plaintiffs' material factual allegations, this Court FINDS that this factor favors default judgment.

F.    Excusable Neglect

As stated earlier, Defendant was served with a copy of Plaintiffs' Complaint and summons and had notice of this Motion. (ECF Nos. 7 & 13-18). Despite ample notice of the lawsuit, the entry of default, and the threat of default judgment, Defendant has not defended in this matter to date. Nothing in the record suggests that Defendant's default was the result of excusable neglect. Rather, it appears that Defendant's default is due to Defendant's conscious and willful decision not to defend in this action. Accordingly, this Court FINDS that this factor favors default judgment.

G.    Policy Favoring Decision on the Merits

There is a policy of favoring decisions on the merits, and default judgments are disfavored.  In re Roxford Foods, Inc., 12 F.3d 875, 879 (9th Cir. 1993).  This factor thus weighs against default judgment.

However, Defendant has not complied with any deadlines, rules, and orders. Defendant has not been responsive and thus, proceeding with litigation would be futile as this case cannot move forward.  Thus, this factor does not preclude the finding that default judgment is appropriate in this case.

H.    Totality of the Eitel Factors

Upon review of the Eitel factors, this Court finds that six (6) out of the seven (7) Eitel factors weigh in favor of default judgment.  This Court thus FINDS and RECOMMENDS that the district court grant Plaintiffs' request for default judgment against Defendant.

III.   Damages

Plaintiffs seek damages in the amount of $35,223.51 in delinquent contributions, $5,777.34 in interest on the delinquent contributions, and $13,283.97 in liquidated damages for $54,284.82 in total damages.  When determining a defendant's liability on a motion for default judgment, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true."  See Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) (citations

omitted).  However, this Court must review the record and, if necessary, make a

further factual inquiry to establish the amount the plaintiff is entitled to recover.

TeleVideo System, 826 F.2d at 917-918.

The Court shall address each category of requested relief below.

A.      Delinquent Contributions

Plaintiffs claim that Defendant owes delinquent contributions in the amount

of $35,223.51 and interest on the delinquent contributions in the amount of

$5,777.34.  The delinquent contributions are for the months of September 2019 to

and including August 2020.  ECF No. 13-3.  The interest on the delinquent

contributions are for the months of September 2019 to and including September

2020 at the agreed-upon interest rate of eighteen percent (18%).  Id.  Plaintiffs state

that the months that have been paid are not included in the calculation of interest.

Id.  In support of its claims, Plaintiffs submitted a declaration with a summary of

the outstanding contribution amounts and interest owed.  Id.  Defendant also

submitted financial statements.  ECF No. 13-11.  This Court FINDS that Plaintiffs

have established delinquent contributions and interest owed in the amount of

$41,000.85 ($35,223.51 plus $5,777.34).

B.      Liquidated Damages

Plaintiffs claim that Defendant owes liquidated damages in the amount of

$13,283.97 for the months of September 2019 to and including September 2020.

ECF No. 13-3. The ERISA, 29 U.S.C. 1132(g), provides that Plaintiffs are entitled

to recover liquidated damages "not in excess of 20 percent (or such higher

percentage as may be permitted under Federal or State law)." ECF No. 13-1 at

Page ID #: 72. The Declaration of Trust Agreements provides that "an Employer

who is delinquent in the payment of Contributions shall pay liquidated damages of

ten (10) percent of the amount of contributions owed, or $20.00, whichever is

greater." Id. In support of their claim to liquidated damages, Plaintiffs submitted

Exhibit "G" to the Motion and a declaration explaining this statement. ECF Nos.

13-3 & 13-11. Based on Plaintiffs' declaration to the Motion (ECF No. 13-3), the

Declaration of Trust Agreements, and ERISA, the Court FINDS that Plaintiffs

have sufficiently claimed that they are owed liquidated damages in the amount of

$13,283.97.

IV.     Attorneys' Fees and Costs

An award of reasonable attorneys' fees and costs is mandatory in all

successful actions to recover delinquent contributions under 29 U.S.C. § 1132(g)

and §1145. Article VII(i) of the Declaration of Trust Agreement also provides for

the recovery of attorneys' fees, but places a limit on the amount recoverable. ECF

No. 13-1 at PageID #: 76. "[I]f it is necessary to take legal action to enforce

payment of Contributions and damages from a delinquent Employer, such

Employer shall be liable for all court and collection costs, including audit fees,

12

Trust Fund office personnel costs, and reasonable attorney's fees of twenty-five

(25) percent of the total amount of Contributions and damages due." Id.

Plaintiffs request attorneys' fees in the amount of $7,722.00 and claims that

this amount is "far below the permitted-calculation 'of twenty (25) percent of the

total amount of Contributions and damages due.'"  ECF No. 13-1 at PageID #: 77.

Plaintiff seeks contributions and damages in the amount of $54,284.82 ($41,000.85

in delinquent contributions and interest owed plus $13,283.97 in liquidated

damages).  Twenty-five percent (25%) of $54,284.82 is $13,571.21 and thus this

Court agrees that the requested attorneys' fees are permissible under the

Declaration of Trust Agreement.  However, this Court must also determine

whether the requested amount of attorneys' fees and costs are in fact reasonable.

Reasonable attorneys' fees are generally based on the traditional "lodestar"

calculation, which multiplies (1) the number of hours reasonably expended by (2) a

reasonable hourly rate.  Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir.

2000) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  The lodestar

amount may also be adjusted based on an evaluation of the factors in Kerr, which

have not been subsumed in the lodestar calculation:

> (1) the time and labor required, (2) the novelty and difficulty of the
> questions involved, (3) the skill requisite to perform the legal service
> properly, (4) the preclusion of other employment by the attorney due to
> acceptance of the case, (5) the customary fee, (6) whether the fee is
> fixed or contingent, (7) time limitations imposed by the client or the
> circumstances, (8) the amount involved and the results obtained, (9) the

experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975) (citing Johnson

v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  There is a strong

presumption that the lodestar amount calculated is reasonable.  See Pennsylvania v.

Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 728 (1987); Fischer,

214 F.3d at 1119, n.4.

      A.     Reasonable Hourly Rate

Plaintiffs request an hourly rate of $260.00 for its attorneys J. George

Hetherington, Brian W. Tilker, and Jacob A. Kamstra.  ECF No. 13-4.  The

reasonable hourly rate is determined by assessing the prevailing market rate in the

relevant community for similar work performed by attorneys of comparable skill,

experience, and reputation.  Roberts v. City of Honolulu, 938 F.3d 1020, 1023-24

(9th Cir. 2019) (citing Kelly v. Wengler, 822 F.3d 1085, 1099 (9th Cir. 2016));

Webb v. Ada County, 285 F.3d 829, 840 (9th Cir. 2002) (citing Chalmers v. City

of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986)).  The relevant community

is the forum in which the district court sits.  Camacho v. Bridgeport Financial, Inc.,

523 F.3d 973, 979 (9th Cir. 2008).  In this case, the relevant community is the

District of Hawaii.

"It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate."  Roberts, 938 F.3d at 1024 (citing Hensley, 461 U.S. at 433 (citation omitted).  "The burden is on the fee applicant 'to produce satisfactory evidence' of the prevailing market rates."  Sam K. ex rel. Diane C. v. Hawaii Dept. of Educ., 788 F.3d 1033, 1041 (9th Cir. 2015) (citations omitted).  In addition to their own statements, attorneys are required to submit additional evidence that the rate charged is reasonable.  Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).  See also Camacho, 523 F.3d at 980 ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation").

Plaintiffs submitted the Declaration of Brian W. Tilker in Support of Award of Attorneys' Fees and Costs.  ECF No. 13-4.  "District courts may also use their 'own knowledge of customary rates and their experience concerning reasonable and proper fees.'"  Sam K. ex rel. Diane C., 788 F.3d at 1041 (citing Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011)).  Based on this Court's knowledge of the prevailing rates in the legal community for work in similar cases, this Court FINDS that the hourly rate of $260.00 for work performed by Mr. Hetherington,

15

Mr. Tilker, and Mr. Kamstra[2] is reasonable.  See e.g., Trustees of Roofers Union

Loc. 221 Tr. Funds v. Laulima Roofing & Waterproofing LLC, Civ. No. 20-00094

LEK-RT, 2020 WL 5638632, at *5 (D. Haw. Aug. 31, 2020), report and

recommendation adopted, Civ. No. 20-00094 LEK-RT, 2020 WL 5637391 (D.

Haw. Sept. 21, 2020).

> B.      Hours Reasonably Expended

Plaintiffs request attorneys' fees in the amount of $7,722.00 for 29.7 hours

of work performed.  ECF Nos. 13-4.  "The party seeking fees bears the burden of

documenting the hours expended in the litigation and must submit evidence

supporting those hours and the rates claimed."  Welch v. Metropolitan Life Ins.

Co., 480 F.3d 942, 945-46 (9th Cir. 2007) (citing Hensley, 461 U.S. at 433).  "In

determining the appropriate lodestar amount, the district court may exclude from

the fee request any hours that are excessive, redundant, or otherwise unnecessary."

Welch, 480 F.3d at 946 (citation and quotation marks omitted).

---

[2] Mr. Kamstra has significantly less experience than Mr. Hetherington and Mr.
Tilker.  Mr. Kamstra has a little over a year of legal experience while Mr.
Hetherington and Mr. Tilker have 42 years and 16 years of legal experience
respectively.  ECF No. 13-4.  Nevertheless, based on this Court's knowledge of
reasonable rates, Mr. Kamstra's requested hourly rate is reasonable for an attorney
with approximately one year of legal experience.  See e.g., Trustees of Roofers
Union Loc. 221 Tr. Funds v. Laulima Roofing & Waterproofing LLC, Civ. No. 20-
00094 LEK-RT, 2020 WL 5638632, at *5 (D. Haw. Aug. 31, 2020), report and
recommendation adopted, Civ. No. 20-00094 LEK-RT, 2020 WL 5637391 (D.
Haw. Sept. 21, 2020).

The invoices Plaintiffs initially provided as evidence in support of their request for attorneys' fees were heavily redacted such that this Court could not determine whether the hours requested were reasonable.  ECF No. 13-12.  This Court directed Plaintiffs to supplement their invoices on April 8, 2021.  ECF No. 21.  This Court finds that Plaintiffs' supplemental filing sufficiently documents and explains the hours expended.  Accordingly, this Court FINDS and RECOMMENDS that Plaintiffs be awarded 29.7 hours of work performed for a total of $7,722.00 in attorneys' fees.

C.      Reasonable Costs

Plaintiffs request costs in the amount of $400.00 to file the Complaint and $143.46 for the service of the Complaint and summons for a total amount of $543.46 in costs.  ECF No. 13-4.  LR54.1 sets forth taxable costs pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. §§ 1821, 1920-1925.  See LR54.1(e) & (f).  Pursuant to LR54.1(f), "[f]ees for the service of process[,]" and pursuant to 28 U.S.C. § 1920 "[f]ees of the clerk[,]" are taxable costs.  This Court FINDS that the costs Plaintiffs request should be brought through a Bill of Costs pursuant to LR54.1.  Accordingly, this Court RECOMMENDS that costs in the amount of $543.46 be DENIED without prejudice.

CONCLUSION

In accordance with the foregoing, this Court FINDS and RECOMMENDS that Plaintiffs' Motion for Entry of Default Judgment against Defendant D&C Welding Structural & Ornamental, Inc. (ECF No. 13), filed on February 5, 2021 be GRANTED as follows:

1.    Plaintiffs' request for default judgment (ECF No. 13) against Defendant be GRANTED;

2.    Plaintiffs be awarded total damages in the amount of $54,284.82 for $35,223.51 in delinquent contributions, $5,777.34 in interest on the delinquent contributions, and $13,283.97 in liquidated damages;

3.    Plaintiffs be awarded $7,722.00 in attorneys' fees for 29.7 hours of work performed;

4.    Plaintiffs be awarded total damages and attorneys' fees in the amount of $62,006.82; and

5.    Plaintiffs be awarded post-judgment interest to be calculated from the date of entry of the judgment in this case until the judgment is paid in full pursuant to 28 U.S.C. § 1961.

The Court RECOMMENDS that Plaintiffs' request for $543.46 in costs be DENIED without prejudice as these costs should be brought in a Bill of Costs.

The Court directs Plaintiffs to (1) serve a copy of this Findings and Recommendations on Defendant and (2) file a Certificate of Service indicating the date of service **by no later than June 2, 2021**.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, May 26, 2021.



Rom A. Trader
United States Magistrate Judge

Civ. No. 20-00410 JMS-RT; *Hawaii Iron Workers Health and Welfare Trust Fund, et al. v. D&C Welding Structural & Ornamental, Inc., et al.*; Findings and Recommendation to Grant Plaintiffs' Motion for Entry of Default Judgment Against Defendant D&C Welding Structural & Ornamental, Inc.